**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICHARD W. TOME, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 61A05-1307-CR-324 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PARKE CIRCUIT COURT
The Honorable Sam A. Swaim, Judge
Cause No. 61C01-1004-FB-00066

**March 12, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Richard Tome ("Tome") entered into an open plea of "guilty but mentally ill" in Parke Circuit Court on four counts of Class B felony criminal confinement. The trial court sentenced Tome to fourteen years executed in the Department of Correction. Tome appeals and argues that the trial court abused its discretion in sentencing him. We affirm.

**Facts and Procedural History**

On April 6, 2011, while Tome was on leave from the Camp Atterbury Job Corp Center, he invited four juveniles ranging in age from eleven to thirteen into an abandoned barn in Marshall, Indiana. Once the juveniles were inside the barn, Tome held a steak knife to the throat of one of the juveniles; held a pitchfork to the throat of another; burned the third juvenile with a cigarette; placed his hands around the third victim's neck and threatened to strangle him; and began to choke the fourth victim. Tome threatened to kill all four juveniles if they reported the attacks. Tome also asked the victims if they were scared and if they were "ready to die." Appellant's App. p. 21.

A witness called 911 to report the attacks and told the emergency dispatcher that Tome had fled the property. Shortly thereafter, the Parke County sheriff and his chief deputy located Tome in the backyard of a nearby residence. Tome had in his possession what appeared to be a gun. At the deputy's urging, Tome placed the gun on the ground. The deputy determined that the gun was a BB gun.

The sheriff's deputy subsequently located three of the juvenile victims still inside the abandoned barn where the attacks had occurred. The deputy also found the pitchfork and steak knife with which Tome threatened the victims. The fourth victim had fled the barn and was later located at his home.

2

On April 7, 2010, the State charged Tome with four counts of Class B felony criminal confinement and four counts of Class C felony battery by means of a deadly weapon. The trial court held an initial hearing on April 9, 2010, during which Tome was determined indigent, was appointed counsel, and entered into an initial plea of not guilty.

On September 27, 2010, Tome filed a motion for psychiatric examination to determine competency and sanity. The motion provided, in part:

> 1. That the defendant has advised defense counsel that he has a significant history of psychiatric or psychological treatment.
>
> 2. That defendant believes that he may be schizophrenic, emotionally disturbed, and have other mental issues as well.
>
> 3. That when defense counsel was discussing the allegations that are being made by the witnesses for the State of Indiana, the defendant appeared to have difficulty in understanding why he was being charged criminally for his actions in this case.
>
> 4. That the defendant advised counsel during our second meeting that the previous night he had a 4 hour conversation with an inanimate object. That the inanimate object had 2 aspects to it. The object was named 'Otis', and had another part named 'Rufus'. Otis is the good person and Rufus is the bad person.
>
> 5. That due to the foregoing circumstances it is believed that a psychiatric evaluation is necessary in order to determine the issue of defendant's competency and sanity.

Appellant's App. pp. 37-38

On the same day, the trial court issued an order appointing two experts, Dr. Rebecca Mueller, a psychiatrist, and Dr. Michael Murphy, a psychologist, to evaluate Tome's competency and sanity. After meeting with Tome, both experts concluded that Tome suffered from bipolar disorder. Dr. Mueller found that Tome also suffered from

3

attention deficit disorder and obsessive-compulsive disorder. Dr. Murphy reported that Tome functions at a borderline range of intelligence and has a history consistent with conduct disorder. Both Dr. Mueller and Dr. Murphy found Tome to be sane at the time the crimes occurred and competent to stand trial.

On April 23, 2013, Tome entered into a plea agreement with the State whereby Tome admitted to the factual allegations underlying the four charges of Class B felony criminal confinement. The plea agreement further provided:

> In return for the defendant's guilty plea, the State will remain silent and sentencing will remain up to the court. The parties further agree that if the Judge does not agree with this sentencing recommendation and sentence the defendant accordingly, the defendant's plea of not guilty shall be reinstated. If this agreement includes an agreement by the defendant to leave any aspect of the defendant's sentence to the discretion of the Judge of the Parke Circuit Court, the defendant further agrees that by entering this guilty plea, he or she is waiving the right to appeal the sentence under Rule 7 of the Indiana Rules of Appellate Procedure.

Appellant's App. p. 47.

On June 6, 2013, the trial court held a sentencing hearing. At the hearing, Tome's grandfather, Richard Norman ("Norman"), testified that he had raised Tome since 2001 or 2002, after Tome's parents, who were both just sixteen years old when Tome was born, abandoned him. Norman also testified that Tome had suffered from mental health issues from a young age.

The trial court sentenced Tome to eighteen years in the Department of Correction with four years suspended to probation, apparently as a single episode of criminal conduct under Indiana Code section 35-50-1-2, further noting that:

4

the defendant does have a history of delinquent behavior. He's twenty-one now, but as a juvenile, defendant had a significant offense of child molesting. If he would've been an adult at that time, that would've been the conviction. And spent a significant amount of his teen years in placement as a result of that offense and violations of probation during that time period. The victims of the offense were less than twelve years of age and there is evidence from the probable cause affidavit indicating that the defendant did threaten the victims and intimidating the victims so as to . . . or in an attempt to keep the victims from reporting the crimes for which he's pled guilty.

The defendant certainly has some mitigating circumstances that the Court needs to discuss. Specifically that the defendant does have significant mental health issues and probably has suffered from mental health issues during the majority of his life, probably without the appropriate amount of treatment that he should've received during that time period.

The Court knows, and Mr. Tome, I certainly have a great deal of compassion for you given the situation you were born into. I mean, your parents were sixteen years of age and have had very little contact with you during your lifetime, and you do have mental health issues on top of all that. So I do feel a great deal of compassion for you and the circumstances you were born into, and really you had no control over. You, more or less, lost the lottery at the beginning. And I wish, you know, there would be more that the Court could do for you and could've done for you earlier. Obviously, it's a rural community and the area that you grew up in, and Parke County in general, just does not have the mental health treatment facilities and structure necessary to resolve or treat the mental health problems that you do have.

And the Defendant has testified that he's learned his lesson and he's pled guilty to these crimes. However, the Court does also need to take into account that the defendant has been in placement, detention or jail for the majority of his life since the time he was fourteen years of age. So it's difficult for the Court to determine whether the defendant could live a law abiding life. The defendant was simply on leave from Camp Atterbury when this offense was committed, so the Court is hesitant to accept the defendant's comments that he can lead a law abiding life.

Tr. pp. 26-28.

Tome now appeals.

5

**Discussion and Decision**

Tome argues that the trial court abused its discretion in sentencing him because, at the sentencing hearing, "[t]he trial court identified the alleged victims as all under the age of the age of twelve. However, the Affidavit of Probable Cause states the two of the alleged victims were over that age." Appellant's Br. at 8 (internal citations omitted).

Sentencing decisions rest within the sound discretion of the trial court. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. Id. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. Id. at 491. A trial court may abuse its sentencing discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. Id. at 490-91.

Tome pleaded guilty to four counts of Class B felony criminal confinement, each of which carries a statutory sentencing range of six to twenty years, with an advisory sentence of ten years. Ind. Code § 35-50-2-5. Tome received a sentence of eighteen years, with fourteen years executed and four years suspended to probation.

6

Tome argues that the trial court abused its discretion in imposing this sentence but fails to explain how the trial court's minor incorrect characterization of the victims' ages[1] during the sentencing hearing is an abuse of discretion. Because Tome has failed to provide us with any cogent argument, and because it is not our role to formulate arguments on behalf of parties, we conclude that Tome has waived this issue on appeal. See Lyles v. State, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005), trans. denied, ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."); Ind. Appellate Rule 46(A)(8)(a).

Waiver notwithstanding, Tome still cannot prevail. The trial court noted the seriousness of Tome's offense and that, as a juvenile, Tome committed the offense of child molesting and "spent a significant amount of his teen years in placement as a result of that offense and violations of probation during that time period." Appellant's App. p. 26. Tome also threatened the victims of the current offense in an attempt to prevent them from reporting his crime. He committed the crime while he was on leave from Job Corp training at Camp Atterbury. The court noted, as mitigating factors, that Tome suffers from serious mental health issues and experienced a difficult childhood and adolescence. After considering all of these factors, the court imposed a sentence of fourteen years executed, well within the Class B felony statutory range of six to twenty years. Under these facts and circumstances, waiver notwithstanding, we cannot say that the trial court's imposition of a sentence of fourteen years executed was an abuse of discretion.

---

[1] The trial court characterized the victims as under the age of twelve, but the probable cause affidavit indicates that two of the victims were thirteen.

7

Affirmed.

BRADFORD, J., and PYLE, J., concur.